O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pacific Business Capital Corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>Time Warner Cable, LLC;<br>Time Warner NY Cable, LLC,<br>a Delaware limited<br>liability company,<br><br>        Defendants. | CV 09-5188 RSWL (PJWx)<br><br>**ORDER Re: Defendants Time Warner Cable, LLC and Time Warner NY Cable, LLC's Motion for Partial Summary Judgment [120]** |

    Before the Court is Defendants Time Warner Cable, LLC and Time Warner NY Cable, LLC's ("Defendants") Motion for Partial Summary Judgment [120]. The Motion was set for hearing for June 6, 2012, and taken under submission on June 5, 2012. After considering all of the papers and arguments submitted on this matter, **THE COURT NOW FINDS AND RULES AS FOLLOWS:**

    The Court hereby **DENIES** Defendants' Motion for Partial Summary Judgment.

///

1

## I. BACKGROUND

Plaintiff Pacific Business Capital Corporation ("Plaintiff") is an asset-based lending company, whose primary business is factoring. Factoring companies like Plaintiff, purchase accounts receivable, such as invoices, for a discount from the face value of the invoice. As part of its business, Plaintiff made advances to third-party Wire to Wire ("WTW").

WTW was a cable installation contractor for Defendants from approximately September 2006 to mid-2008. WTW's principal member was a man named Louis Friedman. In April 2005, WTW signed a factoring agreement with Plaintiff called the Restated Accounts Receivable Purchase & Security Agreement ("A/R Purchase Agreement").

For invoices identified on a Schedule of Accounts, Plaintiff would factor or purchase those invoices from WTW for a purchase price that would be equivalent to a percentage of the face value of the invoice. As a matter of course, part of this purchase price would initially be paid to WTW. Plaintiff, however, would hold back a percentage of the purchase price owed to WTW as a "contingent reserve" for the purpose of protecting itself in case the value of the invoice could not be collected. Once Plaintiff received payment from Defendants for the face value of the invoice, Plaintiff would reduce the "contingent reserve" by an amount equivalent to Plaintiff's

factoring fees.  The balance left over in the "contingent reserve" would be deposited in an "Earned Reserve" account, which would be money that WTW was entitled to.  Plaintiff, however, could choose to either pay the "Earned Reserve" amount to WTW or to hold onto the "Earned Reserve" as a collateral against debt that WTW may have with Plaintiff.

Defendants acquired relevant portions of its Los Angeles operation when it bought Adelphia in 2006. Mike Ramirez, a Technical Supervisor, continued working for Defendants when Defendants bought Adelphia.  For an invoice to be verified by Defendants, Defendants required that each invoice be accompanied with its corresponding work order.  WTW's owner, Friedman, typically emailed Ramirez and Plaintiff in the same email to verify invoices, and Ramirez always stated that he would forward the invoices for processing.

Some invoices were paid to Plaintiff.  However, at a certain point in time, Defendants stopped paying invoices to Plaintiff.  On November 26, 2007, Plaintiff sent Defendants a list of outstanding invoices, totaling $3.9 million.  However, Defendants advised Plaintiff that some of these invoices appeared to have already been paid.  In April 2008, Defendants stopped using WTW and instead entered into a contract with a new company owned by Friedman, named Wired or Not, and in July 2008, Wired or Not subsequently entered into a separate factoring agreement with Counterclaimant

Canfield Funding d/b/a Millennium.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (2007).

Once the moving party makes this showing, the non-moving party must set forth facts showing that a genuine issue of material disputed fact remains. Celotex, 477 U.S. at 322. The non-moving party is required by Federal Rule of Civil Procedure 56(e)[1] to go beyond the pleadings and designate specific facts

---

[1] The Federal Rules of Civil Procedure were amended on December 1, 2010. Federal Rule of Civil Procedure 56(e) has now been codified as Federal Rule of Civil Procedure 56(c).

4

showing a genuine issue for trial exists.  Id. at 324.

### III. ANALYSIS

**A.  Evidentiary Objections**

As a preliminary matter, in ruling on a Motion for Summary Judgment, the Court considers only evidence that is admissible at trial.  Fed. R. Civ. P. 56(c). Plaintiff makes several evidentiary objections concerning the Declarations of Steven Naber and John Mittelbach.  Pursuant to the reasons below, the Court **OVERRULES** all of Plaintiff's evidentiary objections.

Plaintiff argues that paragraphs 4-5, 7, and 8 of the Declaration of Steven Naber should be excluded because they lack foundation.  The Court **OVERRULES** this objection as Naber is a Director of Technical Operations for Defendants and likely has personal knowledge regarding services provided by cable installation contractors.

Plaintiff argues that paragraph 22 and exhibit 21 of the Declaration of John Mittelbach is inadmissable because it tries to introduce an unverified expert report.  The Court **OVERRULES** this objection as moot as Defendants have supplemented this expert report with sworn deposition testimony that verifies the contents of the report.

All other objections are **OVERRULED AS MOOT** as the paragraphs objected to are not necessary for the Court's analysis.

///

**B.   Motion for Partial Summary Judgment**

On balance, the Court finds that Defendants do not meet their burden for summary judgment for either Plaintiff's Collection on Accounts claim or Plaintiff's Fraud claim.  Accordingly, as Defendants' Motion only pertains to these two claims, the Court **DENIES** Defendants' Motion in its entirety.

    i.   *Plaintiff's Collection on Accounts Claim*

In their Motion, Defendants primarily argue that Plaintiff's Collection on Accounts claim is ripe for summary judgment because Plaintiff has no proof that any of the $14 million of invoices that Plaintiff asserts are due and owing, are in fact valid invoices. The Court, however, finds that summary judgment is inappropriate for Defendants' liability on this claim because triable issues of fact exist pertaining to the validity of the invoices.

The Court finds that Defendants are incorrect in their assertion that the sole method in which Plaintiff can prove the validity of the $14 million worth of invoices is through a showing of backup documentation. Plaintiff has produced evidence that it routinely submitted many of these invoices to Ramirez, an individual who was indisputably employed by Defendants as a Technical Supervisor.  Dodge Decl. ¶ 8, Ex. C. Copies of various emails show that Ramirez replied to many of these emails and even confirmed receipt of those invoices by stating that he would "forward" them

on for processing. Osterstrom Decl. ¶ 12, Ex. K. Though there seems to be contrasting emails regarding the validity of the invoices, it is undisputed that some of these invoices were paid by Defendants. Dodge Decl. ¶ 13, 15.

Moreover, when Plaintiff asked Defendants to affirmatively verify these invoices, Defendants' employee, Mellonie Cartwright, advised Plaintiff that some invoices had already been paid. Suppl. Mittelbach Decl. Ex. E. Thus, viewing all of this evidence "in a light most favorable to the opposing party," the Court finds that a fair-minded jury could find that some of these invoices were valid based on the pattern of conduct between the Parties regarding the invoices. <u>Diaz v. American Tel. & Tel.</u>, 752 F.2d 1356, 1358 n.1 (9th Cir. 1985)(holding that underlying facts must be viewed in the light most favorable to the opposing party).

In the alternative, Defendants argue that if the Court cannot make a summary judgment ruling concerning the validity of the invoices, the Court should, at the least, minimize Defendants' liability by (1) $460,000, which Defendants argue represents the amount of invoices that Plaintiff has already been paid in full and (2) any claims for payments for invoices that are not from WTW but from "Wired or Not."

Addressing the first argument, Defendants contend that it is undisputed that Plaintiff's claim includes

$460,000 worth of invoices that Defendants have already paid in full to WTW and that WTW has already paid in full to Plaintiff.  Defendants argue that they should not have to double-pay for these invoices as the "underlying obligation" in those invoices has already been extinguished.  Defendants are correct that they would have no obligation to pay Plaintiff for invoices, for which Plaintiff has already recovered payment.  California law is well-settled that "a security interest cannot exist without an underlying obligation."  <u>Alliance Mortgage Co. v. Rothwell</u>, 10 Cal. 4th 1226, 1235 (1996).

  Summary judgment, is not appropriate, however, for the $460,000 worth of invoices because there is still a genuine issue of material fact concerning whether Plaintiff actually recovered $460,000 worth of invoice payments from WTW.  First, in their Statement of Undisputed Facts, Defendants are inconsistent regarding the amount that Plaintiff allegedly recovered from WTW's reserve account.  Furthermore, Plaintiff introduces a Declaration from its Vice President, Dianna Dodge, where she testifies that Plaintiff never actually collected any money from Plaintiff's reserve account.  Dodge Decl. ¶ 5.  Rather, she testifies that the "[n]o amounts were 'deposited' . . . [r]ather, it was a mere book entry."  <u>Id.</u> at ¶ 26.  Based on these facts, a reasonable fact-finder could conclude that Plaintiff never recovered any of the $460,000 from WTW.

1  As such, this issue is not appropriate for summary
2  judgment.
3     Second, Defendants argue that their obligation to
4  pay Plaintiff should be reduced by any claims for
5  payments or invoices that are not from WTW but from
6  "Wired or Not."  The Court, however, denies Defendants'
7  request for summary judgment for this issue as there
8  are genuine issues of material fact pertaining to
9  whether "Wired or Not" actually did the work on certain
10 "Wired or Not" invoices.  Plaintiff proffers specific
11 facts that affirmatively cast doubt upon the validity
12 of certain Wired or Not invoices.  Plaintiff states
13 that some Wired or Not invoices were actually printed
14 on WTW letterhead but had WTW's name crossed out and
15 written in its place the name Wired or Not.  Plaintiff
16 also proffers deposition testimony in which Defendants'
17 employees testify as to their initial confusion
18 regarding the difference between WTW and Wired or Not.
19 The Court finds that from these facts, a reasonable
20 juror could find that some of the Wired or Not invoices
21 were actually WTW invoices.
22    In all, the Court finds that genuine issues of
23 material fact exist as to Plaintiff's Collection on
24 Accounts claim, and as such, the Court **DENIES** summary
25 judgment for this issue.
26    ii.  *Plaintiff's Fraud Claim*
27    "The necessary elements of fraud are: (1)
28 misrepresentation (false representation, concealment,

9

or non-disclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." Alliance Mortgage Co., 10 Cal. 4th at 1239 (quoting Molko v. Holy Spirit Assn., 46 Cal. 3d 1092, 1108 (1988)). In this case, Defendants argue that they are entitled to summary judgment for Plaintiff's fraud claim because Plaintiff cannot meet its burden to show that there was a misrepresentation by Defendants and that Plaintiff justifiably relied on any alleged misrepresentation.

For the element of misrepresentation, Defendants argue that all of Plaintiff's allegations of misrepresentation are statements made by Ramirez, and thus, because no statement made by Ramirez can be attributed to Defendants, summary judgment should be found in Defendants' favor. This Court, however, finds that triable issues of fact exist as to whether Ramirez had authority to make statements on behalf of Defendants. The Ninth Circuit has held that "[u]nless only one conclusion may be drawn, existence of agency and the extent of an agent's authority is a question of fact and should not be decided on summary judgment." C.A.R. Transp. Brokerage Co., Inc. v. Draden Restaurants, Inc., 213 F.3d 474, 479-480 (9th Cir. 2000).

Here, Ramirez allegedly misrepresented to Plaintiff that all the invoices submitted to Defendants were

valid, due, and owing. The Court finds that a reasonable juror could conclude that Ramirez had, at a minimum, ostensible authority to make such a statement regarding the validity of invoices given his undisputed position as a Technical Supervisor for Defendants. Plaintiff's employees testify that in years past, Defendants granted all Technical Supervisors authority to verify invoices. This is evidenced by "estoppel letters" signed by a "Technical Supervisor," and the undisputed role of Technical Supervisors in verifying invoices at Adelphia, a company that Defendants acquired in 2006. Osterstrom Decl. ¶ 12, Ex. K.

Though Defendants state that Ramirez did not have actual authority in the company to make statements about invoices, numerous invoices were sent to Ramirez, with copies to others working within the company, and Plaintiff has presented testimony that some of these invoices may have been verified and paid to Plaintiff. Dodge Decl. ¶ 7. Thus, viewing the evidence in the light most favorable to the opposing party, the Court finds that a reasonable juror could conclude that Ramirez did have ostensible authority to make misrepresentations on behalf of Defendants.

In the alternative, Defendants argue that summary judgment should be granted on this claim because any reliance by Plaintiff on statements made by Ramirez was not reasonable. The Court, however, finds that genuine issues of fact exist regarding this element of

Plaintiff's fraud claim.  Throughout Defendants' Motion, Defendants argue that it was unreasonable for Plaintiff to rely on Ramirez because language in Defendants' agreement with WTW, states that all questions about invoices should be handled by Mellonie Cartwright.  However, deposition testimony by Cartwright reveals that it was not Cartwright's job to communicate with factors.  Osterstrom Decl. ¶ 14, Ex M. Moreover, Cartwright admits that in her position she would not even return Plaintiff's call.  Id.  From this testimony, a reasonable juror could conclude that because Cartwright could not communicate with Plaintiff, it was reasonable for Plaintiff to have relied on the statements by Ramirez, especially since some of the invoices sent to Ramirez may have been verified.

Accordingly, the Court finds that Defendants' have not met their burden for summary judgment, and as such, the Court **DENIES** summary judgment for Plaintiff's fraud claim.

### IV. CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Defendants' Motion for Partial Summary Judgment as genuine issues of fact exist concerning both
///
///
///
///

Plaintiff's claim for collection on accounts as well as Plaintiff's fraud claim.

**IT IS SO ORDERED.**

DATED: July 20, 2012

                                                  RONALD S.W. LEW

                                                  **HONORABLE RONALD S.W. LEW**

                                                  Senior, U.S. District Court Judge