O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pacific Business Capital Corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>Time Warner Cable, LLC;<br>Time Warner NY Cable LLC, a Delaware limited liability company,<br><br>        Defendants. | CV 09-5188 RSWL (PJWx)<br><br>**Statement of Uncontroverted Facts and Conclusions of Law Re: Counterclaimant Canfield Funding, LLC's Motion for Partial Summary Judgment [125]** |

After consideration of the papers and arguments in support of and in opposition of Counterclaimant Canfield Funding, LLC's ("Canfield Funding") Motion for Partial Summary Judgment [125], the Court makes the following findings of fact and conclusions of law.

**UNCONTROVERTED FACTS**

1. On April 22, 2005, Wire to Wire Communications, Incorporated ("WTW") executed and delivered to Plaintiff Pacific Business Capital Corporation ("Plaintiff") the Accounts Receivable Purchase &

1

Security Agreement ("A/R Purchase Agreement"). Cooper Decl., ¶ 2, Ex. 1 (A/R Purchase Agreement).

2. Paragraph 27 of Plaintiff's A/R Purchase Agreement states, in pertinent part, "SECURITY INTEREST/COLLATERAL: As further inducement for [Plaintiff] to enter into this Agreement, [WTW] gives to Plaintiff, as collateral . . . a security interest, under the Uniform Commercial Code, in . . . [a]ll assets, including without limitation any and all presently existing or hereafter arising, now owned or hereafter acquired Accounts, Accounts Receivable." Id.

3. On April 22, 2005, WTW executed the Irrevocable Assignment of Accounts Receivable and Proceeds to Pacific Business Capital Corporation ("Irrevocable Assignment"). The Irrevocable Assignment provides that WTW "does hereby assign all of its right, title and interest in all of its commercial Accounts Receivable, to Pacific Business Capital Corporation." Cooper Decl., ¶ 3, Ex. 2 (Irrevocable Assignment).

4. Plaintiff sent two notices to Defendants Time Warner Cable, LLC and Time Warner NY Cable, LLC ("Defendants") on August 18, 2006 and August 24, 2006, and Defendants do not dispute that they received these Notifications of Assignments. Dodge Decl. ¶ 6, Ex .1 and ¶7, Ex. 2. These Notification of Assignments are signed by WTW and specifically assign WTW's accounts receivable to Plaintiff. Id.

1    5.   WTW has since defaulted on its obligations to
2 Plaintiff.  Dodge Decl., ¶ 10.
3    6.   Canfield Funding is a New York Limited
4 Liability Company, whose principal business is
5 factoring accounts receivable.  Benkovich Decl. ¶¶ 2,
6 3.
7    7.   Wired or Not is a Nevada Corporation
8 organized under the laws of the state of Nevada.
9 Blersch Decl., ¶4.
10   8.   In or about May 2008, the Managing Member of
11 Canfield Funding, John Benkovich, was contacted by
12 Louis Friedman who explained that he was an
13 officer of Wired or Not and expressed an interest in
14 entering into a factoring agreement, on behalf of
15 Wired or Not, with Canfield Funding.  Benkovich
16 Decl., ¶ 5.
17   9.   Canfield Funding entered into a valid factoring
18 agreement with Wired or Not.  Benkovich Decl., ¶¶ 5, 8.
19   10.  Prior to entering into a factoring agreement
20 with Wired or Not, Canfield Funding conducted a UCC
21 search in Nevada, the state where Wired or Not is
22 incorporated.   Blersch Decl., ¶¶ 8, 9.
23   11. Through this search, Canfield Funding
24 discovered that there were no outstanding liens or
25 filings against Wired or Not.  Blersch Decl., ¶¶ 4, 6.
26   12. On July 2, 2008, Canfield Funding filed a UCC-1
27 financing statement with the state of Nevada, naming
28 Wired or Not as the Debtor.  Blersch Decl., ¶ 10.

13. Plaintiff never entered into any agreement with Wired or Not or ever filed a financing statement for Wired or Not with the Nevada Secretary of State.

14. Defendants acknowledge that three invoices - 34-062908-02, 34-070608-01, 34-072008-01 - are due and owing to Wired or Not. These invoices add up to $151,591.00. Docket 26, ¶ 25; Benkovich Reply Decl., ¶ 6, Ex. 2.

15. These invoices reflect work performed after Canfield Funding entered into a factoring agreement with Wired or Not. Benkovich Reply Decl., ¶ 6, Ex. 2.

## CONCLUSIONS OF LAW

1. California Commercial Code § 9301(1) provides that the law of the state where a debtor is incorporated governs "perfection, the effect of perfection or non-perfection, and the priority of security interests in collateral." As such, Nevada law governs the priority of security interests in Wired or Not's accounts and invoices with Defendants.

2. Nevada's Commercial Code states that priority among conflicting security interests in the same collateral is given to the first entity that files a financing statement with the Secretary of State.

3. Given that Canfield Funding was the first party to file a financing statement against Wired or Not with the Nevada Secretary of State, the Court finds as a matter of law that Canfield Funding perfected a first

4

priority security interest in all of the assets of Wired or Not, including its accounts receivable derived from cable installation services rendered for the benefit of Defendants.

    4.   As such, Canfield Funding is entitled to $151,591.00 in disputed funds that Defendants list as due and owing in their Answer and Counterclaim.

**IT IS SO ORDERED.**

DATED: July 20, 2012

                              RONALD S.W. LEW
                            **HONORABLE RONALD S.W. LEW**
                            Senior, U.S. District Court Judge